DORA MILLER AND HARRY MILLER, PLAINTIFFS-RE-
SPONDENTS, v. PUBLIC SERVICE COORDINATED
TRANSPORT, A CORPORATION, DEFENDANT-APPEL-
LANT.

Argued April 23, 1951—Decided May 21, 1951.

*Mr. Carl T. Freggens* argued the cause for the appellant (*Mr. Louis F. Stein, Jr.,* of counsel).

*Mr. Abraham I. Mayer* argued the cause for the respondent (*Messrs. Mayer and Mayer,* attorneys).

The opinion of the court was delivered by

BURLING, J.   This is a civil action which sounded in tort and the gravamen of which was the alleged actionable negligence of the defendant.   The plaintiff Dora Miller alleged she was a passenger upon a bus which was operated by the defendant as a common carrier in the City of Newark in this

State. She alleged that the defendant failed to perform its duty in the operation of a crowded bus and the proximate result thereof was the injuries sustained by her.

The appeal is from a judgment of the Appellate Division of the Superior Court reversing a judgment of the Law Division of the Superior Court, Essex County, entered as a result of the granting of defendant's motion for dismissal made at the close of plaintiff's case. The right of appeal to this court arose from a dissent in the Appellate Division of the Superior Court. *N. J. Constitution*, 1947, *art. VI*, § *V*, *par.* 1 (*b*).

The question involved in this appeal is whether the evidence and reasonable inferences to be drawn therefrom spell a *prima facie* case of negligence on the part of the defendant which proximately caused the injuries sustained by the plaintiff. The principles of law involved in the determination of this matter are not novel.

The first of these principles is that a motion for the involuntary dismissal of an action under our present practice, *Rule* 3:41–2, is comparable to a motion for an involuntary nonsuit under our former practice, in that it admits the truth of the plaintiff's evidence and every inference of fact that can be legitimately drawn therefrom which is favorable to the plaintiff but denies its sufficiency in law. The second principle is that a common carrier of passengers is under a duty to exercise a high degree of care in transportation of its passengers. Although it is recognized that the overcrowding of the transporting vehicle is not negligence *per se,* the carrier's duty is to exercise a degree of care for the passengers' safety which is commensurate with the risk of danger likely to arise from crowding which reasonable foresight should anticipate.

The duty has been defined in *Hansen v. North Jersey Street Ry. Co.,* 64 *N. J. L.* 686 (*E. & A.* 1900) at pages 696, 697, as follows:

"Common carriers habitually transport persons of every degree of bodily health and vigor, including the young and the aged and infirm

of both sexes. That exit from a crowded car is likely to be attended, in the case of any passenger, with some difficulty, and in the case of a feeble person, with some risk of injury, is a matter of daily observation and familiar experience. Reasonable foresight should anticipate the possibility of such danger and due caution should provide against it. The defendant was, therefore, bound specifically to use a high degree of care to protect the plaintiff, not indeed from crowding *per se*, but from danger likely to arise from crowding. Considerations of public policy strengthen this conclusion. If common carriers are to be allowed to cram their cars with passengers, to their own profit and the discomfort of the public, they should be held all the more to a strict and active responsibility to use due care to secure safe entrances and exits. Otherwise, the obligation of a plain duty will be weakened by embarrassments of their own creation."

In *Egner v. Hudson and Manhattan R. R. Co.*, 109 *N. J. L.* 367, 369 (*E. & A.* 1932), it was held:

"* * * It is well recognized, that exit from a crowded car is likely to be attended, in the case of any passenger, with some difficulty; and a common carrier is specifically bound to use a high degree of care to protect its passengers, not from crowding *per se*, but from danger likely to arise from crowding, which reasonable foresight should anticipate. *Hansen v. North Jersey Street Railway Co.*, 64 *N. J. L.* 686."

With these principles of the law in mind we turn to an examination of the pleadings and evidence in the record before us. The allegations of the complaint were relied upon in the pretrial order. An additional gravamen was added to the pretrial order which read as follows: "and by reason of the sudden movement of the bus forward she was caused to fall and suffered injuries." The complaint was not amended to include this statement. At the trial the opening to the jury by the plaintiff made no reference thereto and the trial proceeded upon the gravamen as alleged in the complaint without comment or action by the court or the attorney for either party. *Rule* 3:16 (*b*).

The complaint alleges *inter alia* that at the time the bus was stopped by defendant to enable the plaintiff to alight, the bus had more passengers than could safely and prudently be carried, creating in the bus and its exit and stairs an

unsafe and dangerous condition, and the operator of the defendant's bus was negligent in that he failed to use due and proper care to protect plaintiff from the dangers from the crowd on the bus; and more specifically he failed to protect the plaintiff from being jostled, pushed and jolted by said crowd and he failed to make available to plaintiff a safe and clear means of exit; and that as the proximate result thereof, plaintiff was thrown down the stairs of the bus and sustained injuries.

At the trial there was evidence from which it might be found together with the legitimate inferences which might be reasonably drawn therefrom that there was negligence on the part of the defendant which proximately caused the plaintiff's injuries. The defendant admitted that on the date of the accident it was a common carrier and operated a bus line known as line No. 14 operating from Clinton Place in the City of Newark. There was testimony that no independent bus runs on that line and that the plaintiff with her daughter and grandson boarded a "Public Service bus, Clinton Place 14 bus" on the day of the incident and all occupied seats thereon (the grandson sitting on the daughter's lap) : that when the bus arrived at their destination the bus was very crowded; all the seats and all the aisle were filled; the aisle "was fully packed, the front and back, every place." The plaintiff testified: "Well, I tried my best to get through, and while I was trying to get myself through everybody was shoving to try to make room for me because there was no room, and as I got to the step they just pushed me and I fell down to the street," and that she said "a few times" to the other passengers, "Please stop pushing." There was testimony that the operator of the vehicle said nothing to the passengers. Plaintiff's daughter said, "I couldn't see the bus driver either because he was completely covered" and she "couldn't even reach the coin box because passengers were standing over the box." The plaintiff testified that "one of the women standing on the step tried to get off and help me. Then my daughter got off. As soon as my daughter got off

the bus the woman went running after the bus to get it, and the bus went on."

The bus had been brought to rest and the door was open for the discharge of passengers at the intersection of Thomas Street and Clinton Avenue. The bus operator was charged with the knowledge of the number of passengers in the vehicle. The overcrowded condition was obvious and presented a situation which required the carrier to exercise a degree of care for the safety of the passengers who were alighting from the bus which is commensurate with the risk of danger likely to arise from crowding which reasonable foresight should anticipate. At this posture of the case, nothing appears to have been done by the operator in this respect. The realities of the day of the problem and desire of the carrier to afford transportation for all who desire it are not overlooked; this does not obviate the necessity of due regard for the safety of passengers who are received for transportation.

For the reasons above stated, the granting of the defendant's motion for dismissal made at the close of the plaintiff's case was erroneous and the judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, BURLING and ACKERSON—4.

*For reversal*—Justices CASE, OLIPHANT and WACHENFELD—3.