MARY WYMAN *vs.* MᶜLELLAN STORES COMPANY.

Hampden.     November 30, 1943. — November 30, 1943.

Present: FIELD, C.J., DONAHUE, DOLAN, & RONAN, JJ.

*Negligence*, Store.

Evidence merely that a customer, in the market department of a store where vegetables were sold and there were many people, slipped and fell near a vegetable counter, on a peapod described as "crushed," "ragged" and "dirty" with no peas inside it, without evidence as to

how the pod came to be on the floor, would not have warranted a finding that negligence for which the proprietor of the store was accountable had caused the pod to be on the floor or that it had been there so long that the proprietor was negligent in not discovering and removing it before the customer's fall.

TORT. Writ in the Superior Court dated October 17, 1940.

The case was tried before *Donahue,* J. In this court it was submitted on briefs.

*J. E. Kerigan,* for the plaintiff.

*R. S. Spooner* & *T. J. Donahue,* for the defendant.

FIELD, C.J. This is an action of tort brought in the Superior Court to recover compensation for personal injuries alleged to have been sustained by the plaintiff as a result of falling in the defendant's store. The case was tried before a judge and a jury. Upon motion of the defendant a verdict was directed for the defendant, and the plaintiff excepted. The verdict was directed rightly.

There was evidence that the defendant conducted a store for the sale of various kinds of merchandise, having a market department for the sale of meats, vegetables and groceries, and that when the plaintiff was in the market department for the purpose of making a purchase she slipped and fell and thereby sustained personal injuries. The evidence of the circumstances attending the plaintiff's slipping and falling was as follows: The floor of the market "was made of smooth, hard wood." The plaintiff "was walking to the vegetable counter to get some soup vegetables." At "a point at the vegetable counter in the aisle between the meat and vegetable counters," the plaintiff "stepped on a peapod which was lying on the floor and slipped and fell." The peapod was "crushed." The plaintiff testified that "the floor looked clean," that she "didn't see anything on the floor" but she "didn't pay no particular attention to it, there was so many people coming in you couldn't tell," that there were "a lot of people going in and out all the time," and that they "were all over the store, going back and up." She further testified that the peapod was "flat, ragged and dark" and that it was "crushed," that she knew that she

"slipped on it" and she "guess[ed] it had been crushed before . . . [she] got hurt," but that she did not know that. Another witness testified that there was "a peapod, that it was dark and crushed and dirty, and . . . there were no peas inside it." It was agreed that another witness, if present at the trial, would have testified that the peapod "had the appearance of being raggedy, crushed, and dirty, and that there were no peas in it."

There was no evidence of the presence or absence of employees of the defendant at any place in the store. There was no evidence tending to show where the peapod came from or how it came to be upon the floor of the store, unless, from the evidence that the defendant sold "vegetables" and that the peapod was near the vegetable counter, it could be inferred, as we need not decide, that the peapod came from that counter. Apart from such an inference there was nothing in the evidence to show that the defendant sold peas, or that there were any peas or peapods in the store other than the peapod upon which the plaintiff slipped. But even if it could be found that the peapod came from the vegetable counter, there was no evidence that it fell from that counter to the floor, or came to the floor in any other way by means of any act or negligence of an employee of the defendant.

The plaintiff's contention, however, is that the evidence warranted a finding that the peapod was on the floor "long enough so that the defendant, in the exercise of reasonable diligence and care, ought to have discovered it and removed it from the floor" and consequently that the defendant was negligent. The reliance of the plaintiff for support of such a finding is and must be upon the evidence of the appearance of the peapod. There was no other evidence tending to support such a finding and this evidence is not enough, particularly in view of the testimony of the plaintiff that there were many people in the store. The appearance of the peapod as described in the evidence might have been created in a very short time — so short a time that the defendant in the exercise of its duty of care was not bound to discover the presence of the peapod on the floor. A contrary finding

was not warranted. The case in this respect falls within the class of cases of which *Newell* v. *Wm. Filene's Sons Co.* 296 Mass. 489, is an example. The evidence in the present case falls short of the evidence in the case of *Connair* v. *J. H. Beattie Co.* 298 Mass. 550, relied on by the plaintiff, which was held sufficient to warrant a finding of negligence.

*Exceptions overruled.*